HILDA HENTZ, ADMINISTRATRIX OF THE ESTATE OF MARTHA MALLEY, PETITIONER-APPELLANT, v. JANSSEN DAIRY CORPORATION, DEFENDANT-RESPONDENT.

Argued February 7, 1939—Decided May 23, 1939.

For the petitioner-appellant, *Abraham H. Gottlieb, Theodore S. Chazin, Maurice C. Brigadier, Burke, Sheridan & Hourigan (Edmund B. Hourigan)*.

For the defendant-respondent, *Coult, Satz & Tomlinson (Joseph Coult)*.

The opinion of the court was delivered by

BODINE, J. The deceased has been, for years, the driver of a milk truck making retail deliveries at homes in Jersey City. On March 4th, 1936, he reported for work at two in the morning, and soon after commenced deliveries. The streets were

very snowy, and it was necessary for him to walk up and down steep grades in order to make deliveries and to reclaim empty bottles. While in the course of his employment and while ascending a hill to the place where he had left his truck, he felt a sharp pain in his left side. It appeared that he suffered a coronary thrombosis, and although he partially recovered he never regained his health and died shortly thereafter. Both the bureau and the Court of Common Pleas properly awarded compensation for the deceased and his widow. Such findings should not be lightly disturbed.

The rule of law which we deem applicable to the situation was stated in *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500, as follows: "Suffice it to say that an accidental strain of a heart, even though the heart was previously weakened by disease, may be a compensable injury under our statute when, as in this case, the accident arose out of and in the course of the employment."

In this case there is no doubt that the deceased suffered an accidental strain of the heart in the course of his employment, and that the strain causing the injury resulted from the employment which happened to be unusually hard on the day in question.

The Supreme Court erroneously considered the circumstance that the heart had been weakened by the strain of work over a long period of time as excluding recovery, but this is a circumstance which under our cases and those decided in England, could make no difference where the accident arose out of and in the course of the employment.

In the case of *Treloar* v. *Falmouth Docks and Engineering Co., Ltd.* (*House of Lords, January* 30, 1933), 26 *Butterworths' Workmen's Compensation Cases* 214, a dock laborer, forty-six years of age, gave himself a jerk while trying to steady a swinging load with his hook. He continued to work. There was a rest period for a quarter of an hour, when in order to bring another sack nearer to the place where he was sitting he raised his hook to stick it in the sack. He fell forward and died due to myocarditis. Lord Buckmaster said (at *p.* 222) : "If a man who is engaged in doing work, and

as part of that work and in the course of it does something which he might do outside, but which, none the less, happens in the course of and arising out of his work and it causes his death, the accident has arisen out of and in the course of his employment. I put to counsel in the course of this case an illustration which appears to me perfectly sound: Supposing a workman is engaged in putting books on library shelves and he lifts the books, and in the course of lifting the books to put them on the library shelves, owing to the fact that the action of lifting his arm causes a strain upon his heart which his heart cannot bear and he falls down dead, nonetheless the accident arises out of and in the course of his employment."

In *James* v. *Partridge Jones and John Paton (House of Lords)*, 26 *Butterworths' Workmen's Compensation Cases* 277, a workman, who was suffering from disease of the coronary arteries brought on by syphilis and whose condition was such that he might die from heart failure at any moment, whether working or not, was working as a dipper in a galvanizing department. He was engaged in the operation of cleaning out the dross, which was of a laborious nature. This operation being finished, he sat down and within ten minutes died. The post-mortem examination resulted in a report that the cause of death was angina pectoris. There was medical evidence to the effect that the operation of drossing had accelerated the workman's death.

Lord Buckmaster quoted at length Lord Loreburn in *Clover, Clayton & Co.* v. *Hughes*, 3 *B. W. C. C.* 284: " 'I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. It is found by the county court judge that the strain in fact caused the rupture, meaning, no doubt, that if it had not been for the strain, the rupture would not have occurred when it did. If the degree of exertion beyond what is usual had to be considered in these cases, there must be some standard of exertion, varying in every trade. Nor do I think we should attach any importance to the fact that this man's health was as described * * *. An accident arises out of the employ-

ment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health.' And he continues: 'In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone, so that whatever the man had been doing it would probably have come all the same, or whether the employment contributed to it. In other words, did he die from the disease alone or from the disease and employment taken together, looking at it broadly? Looking at it broadly, I say, and free from over nice conjectures: Was it the disease that did it or did the work he was doing help in any material degree?' "

In the case of *Lochgelly Iron and Coal Co., Ltd.,* v. *Walkenshaw,* 28 *Butterworths' Workmen's Compensation Cases* 230, a brusher, employed in a colliery, was engaged in his ordinary work on night shift. He had been trying to bring down part of the roof at which he was working. He had just decided that it was too hard to bring down with the pick and that he would require to fire a shot to bring it down, when he felt a pain in his chest and a choking sensation in his throat. Thereafter, with the help of a companion, a shot was prepared and fired. He was able to carry on with his work intermittently, but felt sick and complained of pain. He went home before the shift was over and never worked since. At the hearing the sheriff-substitute found the workman had had sudden heart failure due to two causes: (1) the bad state of the heart and arteries, and (2) the heavy brushing work on which he had been engaged during the shift. He accordingly made an award of compensation in the workman's favor. The appeal was dismissed.

In *Hilton* v. *Billington & Newton, Ltd.,* 29 *Butterworths' Workmen's Compensation Case* 299: A lorry driver for some years had had heart disease. On February 21st, 1936, while driving a lorry which was not fitted with a self-starter he was obliged owing to carburettor trouble frequently to use a starting handle to re-start the lorry. As a result of the strain and exertion he was done up at the end of the day.

He returned home late and complained of a pain under his heart. He was unable, partly owing to an attack of influenza, to resume work until March 16th. He then worked until March 28th though complaining all the time of the same pain. After March 28th he got worse and on April 22d died from aortic valvular disease. On a claim by his widow for compensation the county court judge, sitting with a medical assessor, found that she had failed to prove that death was due to the disease and the employment taken together, and made his award for the employer. The widow appealed. Held, the county court judge had misconstrued the effect of the medical evidence which was conclusive that the strain at work had contributed to the death and the applicant was entitled to an award.

In *Whittle* v. *Ebbw Vale Steel, Iron and Coal Co., Ltd.,* 29 *Butterworths' Workmen's Compensation Cases* (at *p.* 179): A workman, aged sixty-one, was employed as a grease boiler. It was part of his duty to see to the fires by throwing out the ashes and fetching coal. He also had to carry grease to the boiler. After the grease had been heated he had to place it into frames to cool. He then had to divide it into blocks and carry the blocks to a water tank for further cooling. This process occupied three quarters of an hour to an hour. His work necessitated a great deal of stooping and the process of grease boiling was repeated three or four times during the shift. The workman having complained to his panel doctor of pain in the region of his heart, the doctor advised him to stay away from work. After resting for a few days, the workman insisted, against his doctor's advice, on returning to work, and started work at seven on the evening shift, which would normally have ended at six on the following morning. At five-twenty A. M. he was talking to a fellow workman. At five-forty he was found dead on the water tank. Death was due to the diseased state of his coronary arteries. His widow claimed compensation. At the arbitration medical evidence was given to the effect that the workman might have died at any moment anywhere, but that strain or stress would be the likeliest exciting cause of death.

Stooping was very prejudicial to him and any work would affect him in his diseased condition as he was not fit for work of any kind. The county court judge on that evidence found as a fact that the work on which the deceased had been employed had contributed to and accelerated the death and made an award for the widow. Held, there was evidence to support the finding of fact and no misdirection.

Nor can we distinguish the case before us from those cases in which a workman while doing his usual work contracts an illness because of the severe conditions essentially dangerous to health such as found in *Voorhees* v. *Smith Schoonmaker Co.*, 86 *N. J. L.* 500; *Graves* v. *Burns,* 10 *N. J. Mis. R.* 667; 110 *N. J. L.* 607; *Van Meter* v. *Morehouse,* 13 *N. J. Mis. R.* 558; *George* v. *Waldron,* 111 *N. J. L.* 4; *Matthews* v. *Woodbridge,* 14 *N. J. Mis. R.* 143; 117 *N. J. L.* 146; *Schneider* v. *Haerter,* 119 *Id.* 548.

The judgment below is reversed, with costs.

*For affirmance*—CASE, DONGES, PORTER, WELLS, JJ.    4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, HETFIELD, DEAR, WOLFSKEIL, RAFFERTY, JJ.    8.