PETER M. DALTON, PETITIONER-RESPONDENT, v. CONSOLIDATED LAUNDRIES CORPORATION, RESPONDENT-PROSECUTOR.

Argued October 3, 1945—Decided February 6, 1946.

Before Justices CASE, BODINE and PERSKIE.

For the prosecutor, McCarter, English & Egner (Verling C. Enteman and Leon R. Ross, of counsel).

For the respondent, Edwin Joseph O'Brien (Thomas J. Brett, of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. R. S. 34:15–7, et seq. It presents for decision the question as to whether the heart injury suffered by the employee was the result of an accident which arose out of and in the course of his employment.

In the Bureau, Deputy Commissioner Medinets answered the posed question in the affirmative. He based his answer upon the holding by our Court of Errors and Appeals in the cases of *Molnar* v. *American Smelting and Refining Co.*, 128 *N. J. L.* 11; 24 *Atl. Rep.* (2d) 392, and *Hentz* v. *Janssen Dairy Corp.*, 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409.

On appeal to the Essex County Court of Common Pleas, Judge Flannagan gave the same answer as that which was given in the Bureau and affirmed the judgment of the Bureau in all respects.

On the employer's application for a writ of *certiorari*, Mr. Justice Parker ordered that the application be made before this court *en banc*. Counsel at the argument of this cause before us agreed, subject to our approval, that if we concluded to allow the writ that the cause be determined on the record as now submitted. We allow the writ and decide the cause accordingly.

Succinctly stated, prosecutor contends that respondent did not expend any unusual effort or exertion and therefore he suffered no "accident" within the statutory meaning of that term. It makes a sharp distinction between a heart condition which it characterizes as *coronary insufficiency* and *coronary thrombosis*. It asserts that respondent suffers from the latter. It concedes that the former may be brought on by exertion or effort because such exertion or effort "consumes the reserve supply of blood and makes impossible the proper functioning of the myocardium;" whereas the latter, coronary thrombosis, "ensues from a sclerotic condition of the coronary artery and needs no precipient other than time to cause disability or death." Prosecutor argues that it is the failure to have recognized this asserted distinction which led the lower tribunals to their erroneous conclusions just as it assertedly led the Court of Errors and Appeals in erroneously deciding the Molnar and Hentz cases. Respondent, on the other hand, contends that he suffered a compensable accident.

Our independent finding of the facts and determination of the applicable law (*Owens* v. *Bennett Air Service*, 133 *N. J. L.* 540), discloses that there is no substantial dispute as to the facts save as to those which relate to the opinions of the medi-

cal experts for the respective parties and which form the basis for the stated distinction upon which prosecutor disclaims liability.

Our independent findings are as follows:

Respondent, Peter M. Dalton, petitioner below, forty-eight years of age, had been employed as a route salesman for the past seventeen years, prior to his claimed accident, by the prosecutor here, Consolidated Laundries Corporation, at its Lackawanna Division. During that entire period the respondent neither knew of nor gave indication of any heart trouble. Nor is there any proof that he otherwise suffered any serious physical ailment during his entire period of employment.

His work consisted of making deliveries of clean towels and linens to stores, offices and barber shops operated by prosecutor's customers and picking up the soiled linens and of collecting bills from those customers. He was obliged to, and did, load and unload the truck operated and used at the beginning and end of each working day.

On the morning of September 14th, 1942, respondent reported for work about 7:00 A. M. He removed fifteen bags of towels from his bin because they did not belong there. He then loaded his truck with supplies for his day's work and drove away to make his usual rounds. He returned to the plant about 5:00 P. M., and unloaded the soiled linens collected, consisting of about fifteen bags, each weighing about 125 pounds, on the Summer Avenue side of the laundry. Each bag was lifted on to a hand truck, about six feet high and three feet wide. This unloading took about fifteen minutes. After this he drove the truck to the High Street side of the laundry and unloaded some clean linens which he had in the truck, and promptly commenced to load the truck with linens for the following day's deliveries. The linens were in a hand truck, inside the laundry building, similar to the one in which he had unloaded the soiled linens, and this hand truck and linens weighed about 300 to 350 pounds. He pushed the hand truck about two feet towards the loading platform when he suffered a terrific pain in the center of his chest, the back of his neck became very cold and he had difficulty in breathing,

got blue in color and felt "as if [he] was going to die." He went outside the building to get some air and laid down on the truck. The pain became worse while lying down and he asked the supervisor to help him inside the building. He was assisted and when he got to the third and top step leading into the building, he vomited and became unconscious. He recovered consciousness in the toilet room of the laundry where he found some of his co-workers removing the vomit and effects of an involuntary defecation. A doctor was called who gave him an injection and caused him to be removed to St. Michael's Hospital, where he remained about four weeks. Thereafter he was admitted to the Veterans Hospital in the Bronx, New York, where he remained for five weeks. Upon discharge from the Veterans Hospital, he was taken home where he has remained ever since. He is unable to work because, as he states, any exertion or excitement brings on pain across his chest, pain under his arms, and he "just stiffens up."

The medical testimony is in dispute. Drs. Block, Kaufman and Olcott testified for the respondent. Dr. Block, a general practitioner, first saw the respondent on November 19th, 1942, after he came out of the hospital. Thereafter the doctor saw the respondent eleven times between November 19th, 1942, and January 5th, 1943, and again saw him on two other occasions, May 19th, 1943, and September 28th, 1943. The respondent was treated for the "clinical appearance of coronary thrombosis" which in the doctor's opinion was "due to the work he [respondent] was doing," and it was due to the "exertion" of his work.

Dr. Kaufman, a specialist in internal medicine and cardiology, first examined the respondent at his home on December 9th, 1942. The doctor made a thorough examination of respondent and took an electrocardiograph. The doctor diagnosed the respondent's ailment as "posterior wall infarction as the result of coronary thrombosis." Another examination was made on May 20th, 1943, another cardiograph was taken and respondent was fleuroscoped. Finding respondent's condition somewhat better as compared with his condition when first examined, the doctor conducted an "exercise test" which

consisted of the respondent bending over and touching the ground twenty times. On the seventeenth time respondent became "dyspneic, began to cough, his forehead became ashen gray in color, he began to perspire freely," and respondent had to stop. This doctor was of the opinion that respondent was suffering from "arterio-sclerosis involving the coronary vessels," that in September of 1942, respondent had a "closure of the vessel which affects the posterior wall of the heart," as a "result" of which "he had an infarction of the myocardium." The doctor "believed" that there was a causal relationship between the exertion of respondent's work on September 14th, 1942, and the attack which he suffered.

Dr. Olcott, a specialist in pathology and internal medicine, examined respondent at his home on January 6th, 1944. He examined the electro-cardiograms and concluded that respondent suffered "an infarction of the posterior wall" of his heart, and that there was a "direct causal relationship between the exertion [respondent] was undergoing on September 14th, 1942, and the infarction and the resulting disability." The exertion referred to was the "pushing of the loaded truck." This doctor did not know, and thus would not commit himself as to whether respondent had a coronary thrombosis or a coronary insufficiency. Whether respondent had one or the other could, in the doctor's opinion, be only definitely determined by an autopsy. Here respondent's attack was not fatal. The doctor, however, said that the "important thing" is not whether respondent had either a "coronary thrombosis" or a "coronary insufficiency" but rather the "important thing" is that respondent had an "infarction."

Dr. Fishberg and Dr. Echikson testified for prosecutor. Dr. Fishberg, a specialist in internal medicine with particular reference to diseases of the circulation and kidneys, examined respondent on February 2d, 1943. In addition thereto the doctor also took an electro-cardiograph of respondent and reviewed his hospital records and examined the electrocardiographs of the other physicians. This doctor concluded that respondent suffered a "coronary thrombosis of his right artery" on September 14th, 1942. This specialist shared the opinion that heart insufficiency is "definitely caused" by effort

or exertion, or over effort or over exertion, but in coronary thrombosis such exertion or effort "plays no demonstrable role." Thus he concluded that there was "no connection between the labor carried out" (by respondent) on that day (September 14th, 1942) and the occurrence of "coronary thrombosis" which in his opinion respondent suffered.

Dr. Echikson, a specialist in internal medicine, examined respondent on October 28th, 1943. He took an electrocardiograph of respondent, and examined those taken of respondent. As a result the doctor concluded that respondent had suffered a "posterior coronary thrombosis," and that there was no causal connection between the "effort" that respondent was "exerting" on September 14th, 1942, and the attack of coronary thrombosis. In this doctor's judgment coronary thrombosis could not be caused by effort but coronary insufficiency could.

The differences in the medical testimony lie in the frankly conceded fact that prosecutor's experts share the view of others in their profession, that neither effort nor exertion, nor trauma is causally related to coronary thrombosis, while other experts as those for respondent entertain a contrary view. The views of prosecutor's experts, as we have had occasion to observe, ignores the construction which we have given to the meaning of a compensable accident under our statute. *Cf. Swift & Co.* v. *Von Volkum,* 131 *N. J. L.* 83, 85; 34 *Atl. Rep.* (*2d*) 897; *affirmed,* 132 *N. J. L.* 344; 40 *Atl. Rep.* (*2d*) 572; *Breheny* v. *County of Essex,* 132 *N. J. L.* 584, 588; 41 *Atl. Rep.* (*2d*) 890; *affirmed,* 134 *N. J. L.* 129; 45 *Atl. Rep.* (*2d*) 700.

Our careful study of all the proofs, the legitimate inferences to be drawn therefrom, and the preponderance of probabilities according to the common experience of mankind (*Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533, 535; 6 *Atl. Rep.* (*2d*) 213; *Martin* v. *Hasbrouck Heights Building and Loan Association,* 132 *N. J. L.* 569, 574; 41 *Atl. Rep.* (*2d*) 898), leads us to the factual finding that respondent suffered a compensable accident.

The undisputed facts are that the work which respondent was doing, at the time he suffered a heart attack, was in line

with his usual work; that he had not suffered a prior heart attack during his entire period of employment; and that his attack occurred after a full day's work, and within about five minutes after he had finished unloading the soiled linens from the truck which unloading lasted about fifteen minutes. Under such circumstances, it is clear that there was a causal relationship between respondent's work and the attack suffered. We so find.

We see nothing in principle which distinguishes the case at bar from the cases criticised (Molnar and Hentz) by prosecutor and which are, of course, binding upon us. *Cf. Fraser* v. *State Board of Education et al.,* 133 *N. J. L.* 597. Nor is the case at bar controlled by the holding in the case of *Schlegel* v. *H. Baron & Co.,* 130 *N. J. L.* 611; 34 *Atl. Rep.* (*2d*) 132. In that case the majority in the Supreme Court were not impressed by the proofs adduced by and for petitioner in support of his version as to how the accident happened and, therefore, concluded that he had failed to establish his asserted claim to compensation. No such issue is here involved.

One thing is absolutely clear. It is that respondent had a weakened heart whether it was due to coronary insufficiency or to arterio-sclerosis of the coronary artery. Thus when, as here, the effort, exertion or strain, irrespective of its degree (*Molnar* v. *American Smelting and Refining Co., supra*), incident to the work respondent was doing precipitated the "infarction," he suffered a compensable accident, one which arose out of and in the course of his employment within the meaning of our statute and decisions. *Bernstein Furniture Co.* v. *Kelly,* 114 *N. J. L.* 500; 177 *Atl. Rep.* 533; *affirmed,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp., supra; Molnar* v. *American Smelting and Refining Co., supra; Swift & Co.* v. *Von Volkum, supra; Breheny* v. *County of Essex, supra.*

The writ is dismissed, with costs.