This appeal brings up a judgment of the Middlesex County Court in a workmen's compensation case which affirmed an award of compensation to the plaintiff. Joseph Grassgreen was employed by the Ridgeley Sportswear Manufacturing Company as receiving and shipping clerk. Formerly he had been a garment cutter for 35 years. On October 1, 1946 he commenced work at 8 o'clock in the morning, at which time he felt well and was in good condition. His work consisted of sorting bundles of cloth, some weighing 50 pounds, others 150 pounds. On that day there was an accumulation of about 60 bundles as a result of two days' deliveries. The plaintiff's task was to take the bundles from the elevator shaft to a sorting table, a distance of about 50 feet. The lighter bundles he carried, the heavier he wheeled by a hand truck. After moving the bundles to the sorting table, he commenced lifting them from the floor to the table, a height of 38 to 40 inches. The seizure occurred when lifting the fifth bundle, weighing about 150 pounds. He could not get his breath, lay down on the table, rested and broke into a sweat. After 20 or 25 minutes, the pain grew worse and he reported to his boss that he was sick and going home. The following day on the advice of a Dr. *Page 64 
Gurshman, he was taken to the Perth Amboy General Hospital where he remained for four weeks until November 5th. Three weeks later he was readmitted and remained until December 6th. Since October 1, 1946 he has been unable to work, complains of weakness and inability to do much walking or standing, and has pains two or three times a week. He testified that he had been working as shipping clerk for three months prior to October 1st, that his routine job every day was carrying the bundles, sorting them and lifting them up to the table. On other occasions he had the task of sorting two days' deliveries on one day. There was no evidence in the case of an unusual strain or exertion.
Turning now to the medical testimony, Dr. Breslow, a general practitioner testified on behalf of the plaintiff that he saw the plaintiff on October 1, 1946 at which time he was in bed, had labored breathing, a crushing feeling in his chest and was ashen gray. Plaintiff told the doctor that he had been at work and felt a severe pain in his chest. The doctor treated him with morphine and stimulants for shock. The diagnosis was acute cardiac collapse. Dr. Gurshman, also a general practitioner, examined plaintiff on the same day. The history he received from the plaintiff was that he had been lifting heavy bundles off the floor to a table about 36 inches high and after lifting about 15 or 16 bundles, he felt a sharp pain in his chest, radiating down the shoulder and arms. The doctor's objective findings were that of a man in shock, pale, cold and with labored breathing. An electro-cardiogram was taken which showed an anterior miocardial infarction — acute anterior coronary occlusion. Two days after admission to the hospital, the plaintiff had auricular fibrillation (a form of cardiac irregularity in which the individual fibers contract independently of each other and so rapidly that there is not complete systole or contraction of the auricle). This subsided within 48 hours. On November 18th the plaintiff had phlebitis (inflammation) of the left leg and secondary to infarction he had pulmonary infarction (infarction being the production of a wedge-shaped area produced by the obstruction of a terminal vessel). The doctor's opinion was that the employment was causally related *Page 65 
to the present condition, since it came on following the exertion or immediately thereafter. Dr. Bernstein, a cardiologist, examined the plaintiff for the first time on January 17, 1947, three and a half months after the alleged accident. In answer to a hypothetical question, the doctor gave it as his opinion that "there is a definite causal relationship between this man's employment on October 1, 1946 and his present condition." When asked whether he attributed the condition to a specific accident rather than to routine work, his answer was "Yes, I feel that routine work may cause cardiac fatigue and set up — speed up the heart and set the stage for an incident such as this. Then the incident itself which may have been done many times before without ill effect, may involve a strain too great for the coronary circulation and the infarction ensues as it did in this case." The doctor further testified that "even assuming that this was routine work, he had been lifting bundles all morning and I still feel that there is causal relationship. I feel that although he had been doing routine work, the physiological mechanism of fatigue had set the stage and the final effort at the time of the peak of his fatigue was such that it set up a coronary insufficiency and the added incident of lifting one more bundle was enough to break the camel's back. That final effort produced sufficient coronary insufficiency to bring about the coronary infarction." The next medical witness on behalf of the plaintiff was a Dr. Goldberg, a neurologist. It is unnecessary to discuss his testimony. On behalf of the defendant, Dr. Kaufman, a specialist in the cardiovascular system gave it as his belief that there was no causal relationship between the employment and the incident of October 1, 1946 and the myocardial infarction, and said that the mere fact that he carried or sorted some bundles which presented no unusual specific strain would not make the employment a contributing factor. On cross-examination he qualified that somewhat by testifying that "If it is true that he lifted a 150-pound bundle and the pain occurred with the lifting, and the symptoms occurred immediately following that, my opinion would be different" and when asked what would be his opinion, then said that it was a competent contributing factor. The defendant produced Dr. *Page 66 
Blumberg, a neurologist and psychiatrist whose testimony bears no relation to the heart condition. The question for determination is whether or not the undisputed disability of the plaintiff is the result of personal injury caused by accident arising out of and in the course of the employment.
It is obvious that confusion has arisen as to the present state of the workmen's compensation law with reference to what constitutes injury by accident. The doubt arises from uncertainty as to the effect of the decision in Lohndorf v. Peper Bros.,134 N.J.L. 156 (Sup.Ct. 1946); affirmed on the opinion of Mr. Justice Oliphant, 135 Id. 352 (E. A. 1947). To grasp the effect of that decision, it must not only be read in light of the facts therein dealt with but also in light of the prior decisions in comparable cases. We proceed to discuss certain of these cases at the time of the Lohndorf decision.
Bernstein Furniture Co. v. Kelly, 114 N.J.L. 500 (Sup.Ct. 1935); affirmed on the opinion of Mr. Justice Perskie with one minor correction irrelevant to the present discussion,115 Id. 500 (E. A. 1935) affirmed an award in a case in which the decedent died immediately after he and a fellow-worker had carried a 250 pound piece of furniture up three flights of stairs on a hot day. The court said: "The heat, the weight of the furniture, the difficulty in carrying the furniture up the stairs, justify the conclusion that it was an unusual exertion with the fatal resultant consequences already pointed out." Three years later in Hentz v. Janssen Dairy Corp., 122 N.J.L. 494(E. A. 1938) the court reversed a judgment of the Supreme Court denying compensation in a case of coronary thrombosis wherein the Supreme Court said there was "nothing unusual about the work, or about the conditions, or about what he was doing when and before he felt a pain in his side" and held that "no case of an accident arising out of and in the course of the employment was shown." The Court of Errors and Appeals however said "In this case there is no doubt that the deceased suffered an accidental strain of the heart in the course of his employment, and that the strain causing the injury resulted from the employment which happened to be unusually hard on the day in question." In Bernstein Furniture Co. v. Kelly, supra, and *Page 67 Hentz v. Janssen Dairy, supra, the decisions turned upon the respective findings of "unusual exertion" in the former and the "unusually hard" employment in the latter. The latter finding is the ratio decidendi of Hentz v. Janssen Dairy, supra and therefore the quoted language of Lord Loreburn from Clover,Clayton Co. v. Hughes, 3 B.W.C.C. 284 that "an accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health" is inapposite.
In Molnar v. American Smelting Refining Co., 127 N.J.L. 118(Sup.Ct. 1941) the court said: "According to one of the two witnesses of the event the wheel became caught in an irregularity in the flooring which caused Molnar to exert unusual force in extricating it; the credibility of that testimony is attacked and we do not rely upon it. * * * As for an accident in the sense used in the earlier days, there was none; but it appears to be the effect of our more recent decisions that where the performance of manual labor entails a strain upon the heart without which death would not have occurred but in consequence of which, combined with causes disassociated with the employment, death does occur the experience constitutes an accident within the meaning of the Employers' Liability Act, and that when the contributory strain arises out of and in the course of the employment the accident likewise so arises." The opinion is noteworthy because it appears to be the first definite holding in an appellate court that a heart attack brought on by the normal physical exertion attendant upon the employment and the absence of any unusual strain or occurrence constitutes an accident arising out of and in the course of the employment. The Court of Errors and Appeals affirmed (128 N.J.L. 11) saying: "The proofs do show that the workman employed by the appellant died of an injury to his heart caused by an accident arising out of and in the course of his employment. There was an extra heavy strain placed upon the man in the work he was doing shortly before he collapsed. It appears that the deceased workman was engaged in a night shift at the appellant's plant. He was required, among other duties, to push a heavy *Page 68 
iron pot, weighing about 850 pounds, mounted on two wheels and containing skimmings from the metal being treated in the furnace from a place near the hearth to a point where it could be dumped. While pushing the pot, one of the wheels stuck in a ditch or crack at a point where an iron floor nearly met a cement floor. The extrication of the wheel required the deceased to make an unusual effort, which resulted in damage to his heart from which he presently died.
"The Supreme Court did not rely upon testimony to that effect because the credit thereof was challenged. We think the testimony supports such a finding, and that the exertion which caused the strain upon the heart was a necessary part of the proofs. The degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart."
To grasp the significance of the two opinions in the Molnar
case it must be borne in mind that the Supreme Court did not rely upon the testimony as to the incident which caused decedent to exert unusual force but held "where the performance of manual labor entails a strain upon the heart * * * in consequence of which * * * death does occur the experience constitutes an accident within the meaning of the Employers' Liability act, * * *". The Court of Errors and Appeals however did not accept the statement last quoted but said that the testimony of unusual exertion was a necessary part of the proofs. It seems self-evident that the holding is that an "extra heavy strain", "an unusual exertion" shortly before a collapse and damage to the heart constitutes an accident within the meaning of the act. If the court meant otherwise it would not have said that unusual exertion was a necessary part of the proofs. The decision turning on the ground of unusual exertion, the statement that "the degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart" is dicta.
We feel constrained to remark upon the case of Cavanaugh v.Murphy Varnish Co., 130 N.J.L. 107 (Sup.Ct. 1943); affirmed on the opinion below in 131 N.J.L. 163 (E. A.
1944). We quote therefrom: "it is the contention of the prosecutor *Page 69 
that the present state of the law in this state is that a strain incurred in work must be the result of an unusual effort and not one that results from the ordinary exertion required in the performance of the work. The claim is made that the opinion of the Court of Errors and Appeals in Molnar v. American Smelting Refining Co., 128 N.J.L. 11, affirming the decision of this court, 127 Id. 118, supports this position. In that case there was evidence of an unusual strain but the Supreme Court did not rest its decision upon that evidence, holding that it was not necessary to show unusual effort or exertion. The opinion of the Court of Errors and Appeals pointed out that there was this evidence of unusual strain and that it supported the judgment. The reasoning of the Supreme Court opinion was not expressly disapproved. On the contrary the upper court said: `The degree of the exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart.' We find in this opinion no indication of an intention to overrule the previous decisions to the effect that any strain incident to the labor performed, either ordinary or extraordinary, that results in injury, constitutes a compensable accident." We point out that the court quoted the statement in the Molnar opinion which we believe to be dicta as "no indication of an intention to overrule the previous decisions to the effect that any strain incident to the labor performed, either ordinary or extraordinary, that results in injury, constitutes a compensable accident." From what has been said above as to the opinion of the Court of Errors and Appeals in the Molnar case, it is doubtful that it supports the quoted statement from Cavanaugh v. MurphyVarnish Co., supra.
In Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156 (Sup.Ct. 1946) affirmed on the opinion below 135 Id. 352 (E. A. 1947), the Supreme Court found the following facts: Joseph Lohndorf, 59 years old, was employed as manager of a paint store, his duties being to wait on customers and take care of the store. On August 23, 1944 he suffered a heart attack while standing by a counter doing nothing and following no unusual exertion. He suffered another attack later that afternoon, one the following day, and on August 25th sustained another attack *Page 70 
after moving some cans of paint from a low truck to the floor. On August 26th he sustained a still further attack, concerning which there was no evidence of anything unusual occurring or of any particular exertion except that it had been a busy day and he had been waiting on customers. He continued to work until 7:30 in the evening and at 3 o'clock the following morning he had an attack and died. He had been suffering from heart attacks since July 1944. The question with which the Supreme Court was confronted was whether the decedent's widow was entitled to compensation for the death of the employee by accident arising out of and in the course of the employment. Mr. Justice Oliphant who wrote the opinion in the Supreme Court said: "There is a presumption that any death from heart disease is the result of natural causes. * * *
"We are not unmindful of the fact that there may be a compensable injury where there is an accidental strain of the heart, even though that heart was previously weakened by disease, if the accident arose out of and in the course of the employment.Bernstein Furniture Co. v. Kelly, 115 N.J.L. 500; Molnar v.American Smelting and Refining Co., 128 Id. 11; Swift Co.v. Von Volkum, 131 Id. 83; but here we conclude there was no accident which arose out of the employment.
"We are satisfied that while the continued employment of decedent was contra-indicated in view of his heart condition there was no accident within the intendment of the statute. An accident is `an unlooked for mishap or untoward event which is not expected or designed.' Geltman v. Reliable Linen and SupplyCo., 128 N.J.L. 443; `an unintended or unexpected occurrence,'Bollinger v. Wagaraw Building and Supply Co., 122 Id. 512; it is an event happening at a specific time or occasion. LiondaleBleach Works v. Riker, 85 Id. 426. The words `accident' and `employment' are not synonymous. To render an injury compensable there must be an event or happening, beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not have resulted. * * *
"We do not perceive under the circumstances that the cases ofHentz v. Janssen Dairy Corp., 122 N.J.L. 494, and Molnar *Page 71 v. American Smelting and Refining Co., supra, are controlling. In these cases it was found that the deceased suffered a strain of the heart from unusually hard labor on the day in question, and that the employee collapsed shortly after his severe efforts."
The statement that "to render an injury compensable there must be an event or happening, beyond the mere employment itself, * * *" coupled with the care with which Hentz v. Janssen DairyCorp., supra, and Molnar v. American Smelting and Refining Co.,supra, were distinguished by pointing out that the strain in those cases followed from unusually hard labor and a collapse shortly after the severe efforts, is indicative of an unwillingness on the part of the court to accept as correct law the statement that "an accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health" and the statement in the opinion of the Court of Errors and Appeals in Molnar v. American Smelting andRefining Co., supra, that "the degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart." Since the affirmance by the Court of Errors and Appeals of Lohndorf v. Peper Bros. PaintCo., supra, in March 1947, it has been cited and followed inTen Eleven Corp. v. Brunner, 135 N.J.L. 558 (Sup.Ct.
1947); Blostein v. Liberty Castle Laundries, Inc., 136 Id. 6(Sup.Ct. 1947); Young v. Sheffield Farms Co., Inc.,136 Id. 489 (Sup.Ct. 1947), affirmed 137 N.J.L. 605 (E. A. 1948); McMackin v. General Motors Corp., 137 N.J.L. 159(Sup.Ct. 1948); Dodge v. John D. Crane Sons, 137 Id. 212(Sup.Ct. 1948); Lagerveld v. Nathan Doblin Corp.,137 Id. 335 (Sup.Ct. 1948); Gaudette v. Miller, 1 N.J. Super. 145,62 A.2d 749 (Super.Ct. 1948); Ames v. Sheffield FarmsCo., 137 N.J.L. 336 (Sup.Ct. 1948), affirmed 1 N.J. 11,61 A.2d 502 (Sup.Ct. 1948). But note Dalton v.Consolidated Laundries Corp., 134 N.J.L. 27 (Sup.Ct.
1946) and Tyler v. Atlantic City Sewerage Co., 137 Id. 16(Sup.Ct. 1948), in both of which cases there is language which suggests that a strain or exertion irrespective of degree followed by a heart attack constitutes an accident within the meaning of the statute. *Page 72 
The fact that Lohndorf v. Peper Bros. Paint Co., supra, is cited by the new Supreme Court in Ames v. Sheffield Farms Co.,supra, justifies the conclusion that the latter court does not accept as correct the statement that the degree of exertion is of no consequence, but on the contrary settles the law that there is a presumption that any death from heart disease is the result of natural causes, and that in order to rebut that presumption there must be evidence of an unusual strain or exertion, or, as said inLohndorf v. Peper Bros. Paint Co., supra, "there must be an event or happening, beyond the mere employment itself". In the instant case at the time that Mr. Grassgreen was seized, he was performing his routine work as he had done previously, and there is no evidence of an unusual strain or exertion at the time of the onset. We are therefore forced to the conclusion that there was no accident within the meaning of R.S. 34:15-1 as construed by the Court of Errors and Appeals and the new Supreme Court.
The judgment under appeal is reversed.