This is an appeal from a judgment in the Somerset County Court of Common Pleas reversing an award for petitioner in the Workmen's Compensation Bureau.
Prior to July 10, 1942, the decedent had been a private chauffeur and had not, to his wife's knowledge, required medical attention or suffered illness prior to his death. On July 10, 1942, he received a pre-employment examination at the respondent's plant which disclosed that he had "overactive hypertension" and that his blood pressure was 176/94. In other respects the findings were negative and he was employed by respondent as a production maintenance helper to begin work on July 13, 1942. He worked daily from July 13, 1942, through July 20, 1942, on which date he quit work at the usual time of 4:15 P.M. and took a shower. Immediately *Page 55 
thereafter at 4:30 P.M. he went to the medical director at the plant who testified that the decedent "complained of exhaustion at the time when he came in and he felt very tired and was sweating profusely." The director put him to bed, kept him quiet and gave him salt tablets. Shortly thereafter the decedent complained of a sharp pain in the chest, was given nitroglycerin, then morphine, and died at 5:50 P.M. of a coronary occlusion.
The decedent's work during the week prior to his death was described by the maintenance supervisor as "Maybe helping pipefitters; he may have been helping — what we have is millwrights, doing millwright work, and he may have been picking up scraps or cleaning up around about; regular helper's work." The precise nature of his work on the day of his death was the subject of sharp dispute. Mr. Glendon Horn testified that on July 20, 1942, the decedent had been assigned to him as helper; that they were engaged in changing a dump valve on a kettle; that they used a four foot wrench weighing 60 to 70 pounds to unscrew the pipe; that the work was exceedingly heavy and required every ounce of strength that he and the decedent had; that it was "awfully hot" and the decedent could not keep up with the work, requiring that they "ease up" every 15 to 20 minutes and go out for fresh air; and that on several occasions during the day the decedent told him that the work was too much for him. In corroboration Mr. Gallian testified that on July 20, 1942, he observed the decedent helping Mr. Horn change the dump valve on the kettle.
The respondent produced testimony by its maintenance supervisor, Mr. Abercromby, and by two former employees, Mr. Stow and Mr. Brown, that the decedent was not engaged in changing the dump valve as described by Mr. Horn, but was engaged, with others, in removing a coil, an activity which they described as not involving any unusual exertion. However, our study of the testimony led us to the conclusion that even the coil removal, under the circumstances presented, involved unusual strain and effort. The coil which weighs about 700 pounds was removed with the aid of a chain block *Page 56 
on an overhead mono rail. Ordinarily, in the language of Mr. Abercromby, "We can do that in four hours with four men;" that day it took eight men eight hours to do the job. Mr. Abercromby testified that, "I stood there when they pulled that out, for the reason I had to go and get more men to help them pull it out." From the foregoing, the respondent seeks to draw the inference that the work was lighter than usual because it was done more slowly and by more men. It seems to us that a contrary inference is the proper one. The day was very hot, the men were finding the removal of the coil exceedingly difficult and although additional men were called it still took them twice the customary time. We believe that the evidence establishes that the decedent's activity on July 20, 1942, involved unusual exertion and strain regardless of whether we accept Mr. Abercromby's or Mr. Horn's testimony.
Although the medical testimony is conflicting and somewhat confusing because the petitioner's doctors did not have the results of the autopsy which had been made under the respondent's supervision, we believe that it sufficiently establishes causal relation between the decedent's unusual exertion and strain and his death as a result of coronary occlusion. Respondent places reliance upon the fact that the autopsy disclosed degeneration of an atheromatous plaque which was described as "a softening of the material and sometimes under pressure it either seeps out or breaks off." In response to the inquiry as to whether the softening or breaking off may be the result of effort or strain, one of respondent's doctors testified that, "We don't think so." On the other hand, one of petitioner's doctors testified on cross-examination that the breaking of the plaque may be the result of effort and that medical authorities "have shown definitely that sudden or sustained effort does play a role and have been able to prove it in animals and humans."
We assume, for present purposes, that where the claim is that death from heart disease resulted from an accident arising out of and in the course of the decedent's employment, there must be a proper showing by petitioner of causal *Page 57 
strain or exertion of unusual nature. See Moleski v. Bohen,1 N.J. Super. 136, 62 A.2d 745 (App. Div. 1948); Grassgreenv. Ridgeley Sportswear Manufacturing Co., 2 N.J. Super. 62,64 A.2d 616 (App. Div. 1949); Temple v. Storch Trucking Co.,2 N.J. Super. 146, 65 A.2d 70 (App. Div. 1949). But even in heart disease cases the petitioner is not confronted with the impossible task of proving the essential elements beyond any doubt; it is sufficient if there is "a probable or more probable hypothesis with reference to the possibility of other hypotheses." Cf. Lohndorf v. Peper Bros. Paint Co.,134 N.J.L. 156, 159 (Sup. Ct. 1946); affirmed, 135 N.J.L. 352
(E. A. 1947); Ames v. Sheffield Farms Co., 1 N.J. 11,61 A.2d 502 (Sup. Ct. 1948). Believing, as we do, that the decedent had theretofore engaged in light work as a chauffeur; that although seemingly well prior to his employment by respondent, he actually had overactive hypertension and an impaired heart; that he was engaged at the respondent's plant for only a week prior to the date of his death in miscellaneous work as a helper; that on the date of his death he was engaged in activity which required, throughout a very hot day, that he be subjected to unusual strain and exertion; that 15 minutes after he quit work he was at the doctor's office in the plant complaining of exhaustion and sweating profusely; that shortly thereafter he complained of a sharp pain in his chest and died in about an hour of a coronary occlusion and that the medical testimony, though conflicting, sufficiently indicated causal relation between the unusual strain and effort and the death; we conclude that in the light of the present extent of medical knowledge on the subject and the common experiences of mankind, the more probable hypothesis is that death was due to the decedent's unusually strenuous activities on his employer's behalf. Accordingly, we find, as did the Bureau, that decedent's death resulted from an accident which arose out of and in the course of his employment.
In its brief and argument, the respondent urged that since the County Court's determination rested upon purely factual issues, this court should not make an independent finding, *Page 58 
but should confine itself to a determination of whether there was sufficient evidence to justify the County Court's determination. Prior to the adoption of the new Rules Governing the Courts of the State of New Jersey, the law was settled that the Supreme Court, on certiorari, not only had power to make independent findings of fact, but was under a duty to do so. See McCrae v.Eastern Aircraft, Trenton Division, 137 N.J.L. 244 (Sup. Ct.
1948). The new rules do not embody any similar pertinent requirement that new findings of fact must be made but Rule
3:81-13 does provide that this court "shall have power to review the facts and make independent findings thereon, which power may be exercised by it to such extent as the interests of justice may require." See Rules 1:2-20, 3:52-1. It is suggested, with much force, that in fulfillment of the rules and the furtherance of sound appellate procedure, this court should generally avoid the making of independent findings of fact where the lower tribunal has made full and fair findings upon adequate evidence. However, no detailed expression as to our future course need be made at this time; we are satisfied that the particular circumstances in the instant case, including the fact that there were conflicting judgments in the Bureau and the County Court rendered well in advance of the adoption of the new rules, amply support the propriety of our having made an independent finding of fact. Although DeMoors v. Atlantic Casualty Ins. Co. of Newark,1 N.J. Super. 1, 61 A.2d 511 (App. Div. 1948); Tuzio v.Saylor, 1 N.J. Super. 61, 62 A.2d 402 (App. Div. 1948), and Walcutt v. Holiday Motors, Inc., 1 N.J. Super. 117,61 A.2d 546 (App. Div. 1948). cited by the respondent, involved the review of District Court judgments rendered before the new rules were adopted, there, unlike the present case, the appellants could not claim prejudice by virtue of the rule changes since they would have been equally unsuccessful under the more limited review of factual findings by District Courts theretofore available. See Vischia v. Benjamin Motors Express,Inc., 24 N.J. Misc. 255 (Sup. Ct. 1945).
The judgment below is reversed. *Page 59