This appeal is by the employer from a judgment of the Middlesex County Court reversing a dismissal of plaintiff's petition, and awarding compensation to the plaintiff.
Respondent testified that he was employed by appellant for five or six years as operator of steam and power shovels and cranes; that on November 5, 1946, he was on a job for appellant at Woodbridge, New Jersey; that he was operating a two and one-half yard Bucyrus Erie diesel motor power shovel; that the machine was not in good working order and that it required unusual effort, which he characterized as "superhuman effort;" that, from time to time, he was obliged to stop and rest because of terrific pains in the chest; that, before his working day was over, he was obliged to leave and went home about 3:30 P.M. and went to bed, and remained there for four days.
With respect to the incident in question, respondent testified as follows:
"Q. What was the condition of this motor when you first — A. It was out of adjustment; it had recently been repaired and it was very much out of adjustment.
"Q. In what way was it out of adjustment? A. It was corroded and rust over the drums. The brakes were too tight, the frictions were too tight. They needed to be entirely readjusted, which is a necessity after any machine is overhauled.
"Q. What was the condition of the jaw clutch? A. Well, in this — when it was on the level it was all right, but when I begin working down hill with it there was slack enough in there that these jaw clutches would shift from travel to swing — * * * The jaw clutch developed change from travel to swing; when you want to travel you must change it over from the travel position to the swing position, there was slack enough in there that these jaw clutches changed, unless it was in the proper position. To do my work that day I *Page 61 
had to hold it out of position with my left hand and also swing it with my right.
"Q. You had to hold what? A. I had to hold it out of position with my left hand and also swing it with my right.
"Q. What kind of an effort was required to hold that up? A. That was almost superhuman effort to hold them up. * * *
"Q. What did you do about the condition of the machine as you found it? A. Well, after operating it some length of time I got almost exhausted from trying to keep it going, and I sent for the master mechanic to come down. * * * Harry Ewing. * * *
"Q. Tell us how you felt? A. I felt exhausted, sweaty and just confused and clammy.
"Q. Was there any pain? A. I begin to get terrific pains in my chest from it and I had to stop from time to time to get myself together.
"Q. How long did you continue on working after you began? A. I operated it until around noon time. Noontime I went to my car and completely exhausted, I lay down instead of eating. * * *
"Q. How did you feel at that time? A. Very bad; I was getting worse all the while. * * * I felt completely exhausted, and terrific pains in my chest; so much so I got dizzy, confused and I was afraid to go on with the thing for fear of either hurting somebody or hurting myself.
"Q. How was your breath? A. Very short; I had no breath. I had to stop occasionally to get my breath."
The appellant's superintendent testified that mechanics "went down to the machine. * * * They must have been there for some adjustment."
The testimony is not in conflict that the shovel was not in good working condition on the day in question.
Medical testimony varied as to causal relationship. A physician for respondent testified that he attributed respondent's condition to the unusual strain and exertion. A physician for appellant testified that he did not so find, because on his examination of him, respondent did not mention any unusual strain due to lifting the shovel. On cross-examination, he testified:
"I said if the lifting episode was such that it was a strain incident and this man developed pain in his chest, shortness of breath during or immediately following the lifting incident, then he had a strain incident and then there would have been causal relationship, but he didn't tell me that; he told me he felt exhausted and weak and about 3:30 quit working." *Page 62 
Apparently, from the testimony, respondent had no complaint prior to the incident in question, that would warrant a finding of any heart ailment.
The burden is upon respondent to establish by the preponderance of testimony and probability that his attack was the result of accidental strain of the heart from an accident arising out of and in the course of his employment. Lohndorf v. Peper Bros.Paint Co., 134 N.J.L. 156 (Sup. Ct. 1946); affirmed, 135Id. 352 (E. A. 1947); Grassgreen v. Ridgeley SportswearMfg. Co., 2 N.J. Super. 62, 64 A.2d 616 (App. Div. 1949).
A review of the testimony persuades us that the respondent bore the burden of establishing that there was an "event or happening, beyond the mere employment itself," which brought about his injury and that, without the unusual strain to which he was subjected by his work, his injury would not have resulted.
The judgment under review is affirmed.