9 N.J. Super. 348 (1950)
73 A.2d 863
LEON TODD, PETITIONER-APPELLANT,
v.
NORTHEASTERN POULTRY PRODUCERS COUNCIL, INC., RESPONDENT-APPELLEE.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided June 8, 1950.
*349 For petitioner-appellant, Mr. Louis H. Roth.
For respondent-appellee, Mr. Samuel D. Lenox.
HUGHES, J.C.C.
This is an appeal from a determination and judgment entered in the Workmen's Compensation Bureau, New Jersey Department of Labor, awarding compensation to petitioner-appellant (hereinafter referred to as petitioner) under our Workmen's Compensation Act. Under the facts and stipulations, the following elements are not in dispute:
1. That petitioner was, on the date of the claimed accident, in the employ of respondent-appellee (hereinafter referred to as respondent).
2. That petitioner's wages were such as to make effective a compensation rate of $25 per week.
3. That respondent had due and timely notice of injury, i.e., the alleged accident, although respondent contests the fact of accident within the intendment of the law.
4. That petitioner received his full salary during his temporary incapacitation, and no compensation is due him for temporary disability.
*350 The sole remaining issues, on which the case turned below, are whether there did, in fact, occur an accident arising out of and in the course of the employment, and, if so, the extent of partial permanent disability resulting therefrom.
Narrowing the issues further, it may be noted that the medical cases of petitioner and respondent agree that the former suffered a coronary occlusion with anterior myocardial infarction. There is some difference of opinion as to the time when the occlusion occurred. The petitioner's proofs indentified this attack, as to time, with a long and burdensome automobile trip which concluded an energetic day in a distant city spent on respondent's business. The respondent's medical witness thought this occlusion, the "damaging attack," occurred when, a short time after his arrival home, petitioner was prostrated with the severe pain caused thereby. The opposing medical cases further seem to coincide on the principle that the petitioner's present disability is caused by underlying residual damage, of a permanent nature, stemming from the coronary occlusion.
The crucial point of variance, however, seems to be whether, and, if so, to what extent, there should be attributed to the employment of the petitioner, an aggravation of residual damage to the heart structure, claimed by petitioner to be caused by the unusual strain of the work in which he was employed during, and shortly after, the original coronary occlusion.
Upon the basis of the whole of the record, including the transcript of the evidence taken below, I find the facts and conclude the law applicable thereto to be as follows:
Petitioner was the managing director of the respondent, his duties involving the promotion and marketing of poultry products. On July 30, he drove in his automobile to Ithaca, New York, and thence, on the following day to Saratoga Springs. His immediate business was to arrange for the approaching convention of poultry producers sponsored by his organization. On the day following his arrival in Saratoga Springs, which was August 1st, he completed a long list of calls and conferences on this business of his employer and, *351 having done so, departed at 2:00 o'clock, or thereabouts, in his car for the long drive home (230 miles) to the vicinity of Trenton, where he lived. He considered it as necessary to make this drive to permit him to be at his office for important duties there on the Saturday morning.
The night before his departure from Saratoga Springs, he had suffered what he called a mild digestive disturbance, which he blamed on the cigar he was smoking. On the trip itself, halfway between Saratoga Springs and Albany, New York, he felt pressure in his chest. He arrived in Newton, New Jersey, where he stopped for dinner between 6:30 and 7:00 o'clock and experienced a tingling in his arms, and for the remainder of the trip he underwent increasing weariness and continued pressure in his chest. Upon his arrival home there was a recurrence of the tingling in his arms, the chest pressure, although much more noticeable, and increasing pain and aching. Shortly, he excused himself to go to bed and the intensity of these symptoms increased to the extent that a physician was called and administered large quantities of morphine to end the pain. A long period in bed followed, during which time he was examined by the physicians, who concluded that he had suffered a recent coronary occlusion with anterior myocardial infarction. This petitioner never suffered such an experience before. His work in Saratoga Springs on the day he left for the return trip was unusually energetic and the completion of his drive home in the automobile was accomplished by the greatest effort on his part.
This petitioner usually traveled on such promotional trips by train. The average yearly mileage travelled by him by automobile was a nominal figure. Access to Ithaca and Saratoga Springs by train was difficult.
Dr. Harry A. Kaplan, who testified for petitioner, was of the opinion that the permanent disability resulted from myocardial infarction, which followed an acute coronary occlusion. This doctor believed that while it could not be said that the driving on the return trip mentioned caused the coronary occlusion, that the petitioner was developing such occlusion *352 during such drive; that occlusion is caused by bleeding in the coronary vessel or under the wall thereof and is caused primarily by a thrombus, which is a plugging caused by coagulation of the blood, resulting in the occlusion of the vessel. The bleeding caused by the thrombus is said to organize a fibrous tissue, which is the myocardial infarction and which, primarily, is here responsible for the residual damage to the heart.
Dr. William E. Mountford for the defendant testified to his opinion that the true coronary occlusion occurred shortly after the petitioner's return to his home that evening and that the previous attacks noticed enroute were spasms of the coronary artery.
While it is clear under this testimony that the evidence does not support a finding that the coronary occlusion was caused, per se, by the strain and unusual effort of this long automobile drive, it is equally apparent to me and I find as a fact, that such occlusion occurred during the early stages of such automobile trip. I further find as a fact that the continued effort in the completion of this trip aggravated the thrombotic bleeding following the occlusion and substantially caused the anterior myocardial infarction which comprises the residual permanent disability.
The inquiry now passes to the effect in law of these established facts. To apply the law accurately, it must be considered that there were here involved two separate events; first, the coronary occlusion, and secondly, the ensuing thrombotic bleeding which brought about, in terminal effect, the scarring, the organization of fibrous tissue, which is the infarction comprising the residual disability. As I find from the medical proofs, these events were proximate in time, but not in causal relationship. The occlusion preceded the other in time, but need not have caused the infarction. The infarction could not have occurred unless the occlusion had preceded it, but the occlusion might well have occurred without the infarction following it. There was, therefore, as I find from the facts, an intervening cause of the serious infarction which *353 has disabled petitioner, namely, the excessive strain of the automobile drive in which petitioner persisted in the course of his employment.
Accordingly, the occlusion, while proximate in time, is not the accident with which we are concerned here. Petitioner's right depends upon the nature of another occurrence, namely, the cause of the intense and damaging myocardial infarction which followed, but was not, at least as far as this record shows, caused by the occlusion. The continued strenuous effort of the automobile drive and the additional and unusual strain thereby placed on the coronary artery, I find to constitute an accident in and of itself, and, moreover, one which certainly arose out of and in the course of the employment to which it was incident.
It is settled that there may be a compensable injury where there is an accidental strain of the heart, even though the heart was previously weakened by disease, if the accident arose out of and in the course of the employment. In this respect, it is not seen that essential difference in logic exists between antecedent heart disease of appreciable duration, and a heart episode such as a coronary occlusion almost immediately preceding such additional strain. Both types of events create a site of vulnerability to additional, accidental later strain, no matter how much later that strain occurs. So here, despite the proximity of time, the infarction is not a concomitant of the occlusion, but rather the result of the abusive strain of the occluded vulnerable artery. To hold otherwise would require a finding from this testimony of integration of occlusion and infarction, and this, as noted, is inadmissible.
Injury from heart disease is commonly believed the result of natural physiological causes. To overcome this "presumption," which seems to me not a legal, but a medical presumption, it is said that there must be evidence of an unusual strain or exertion and that, moreover, the causative agency must be an event or happening beyond the mere employment itself. Lohndorf v. Peper Bros., etc., 134 N.J.L. 156 (Sup. Ct. 1946); Franklin v. U.S. Bronze Powder Works, 6 N.J. *354 Super. 320 (App. Div. 1950). The use of this latter term has given rise to some confusion in our cases, since an event or happening beyond the employment would plainly not be an incident of the employment, and, thus, not compensable at all. Temple v. Storch Trucking Co., 2 N.J. Super. 146 (App. Div. 1949); Grassgreen v. Ridgeley Sportswear Mfg. Co., 2 N.J. Super. 62 (App. Div. 1949). I believe the use of this term is intended to embrace the nature of the work being done at the time of the alleged strain, requiring some abnormality on its part, to qualify it as a true "accident" within the meaning of the law. It has been urged quite strenuously that this distinction, i.e., between an ordinary and an extraordinary strain, introduces to judicial administration a wholly arbitrary classification that is not to be found in the Act. Temple v. Storch, supra.
Probably the purpose of the use of this term (at least in cases of alleged aggravation) is to remove from the area of compensability those cases in which a heart sufferer continues his work, although work is contra-indicated, rest and inaction being essential for safety. In such case the contra-indicated work is often shown to be the immediate cause of collapse and injury. But, as pointed out in Lohndorf v. Peper, supra, this contra-indicated work, while demonstrably exerting strain and damage to the heart and being, no doubt, the immediate cause of injury, is not an accidental cause. And while the resultant injury is not invited nor foreseen, the normality of the work itself divorces it at once from the category of an "unlooked for mishap or untoward event, which is not expected or designed," which is the characteristic of the "accident" contemplated by our Act.
In cases of this nature, where it appears that the strain exerted is not unusual, that the work being done is a routine, usual and not unexpected task in the employment, the occurrence is not held to be an "accident" and is not compensable because there was no event or happening beyond the mere employment itself (i.e., the normal and routine incidents of *355 such employment). Seiken v. Todd Dry Dock, Inc., 2 N.J. 469 (1949).
These being the poles of distinction, then, it is clear that the instant exertion and its effects comprised an accident within the meaning of the Act. The abuse and strain on this occluded and vulnerable artery were caused directly, as I find, by the persistence of petitioner in this long automobile trip. That trip was a part of his employment. It was not routine; under the evidence here, it was not only extraordinary, but unprecedented. It was, thus, a radical departure from the usual and long-established routine of his work, and falls clearly within the category of a compensable accident. Franklin v. U.S. Bronze Powder Works, supra.
The petitioner, therefore, has established by the necessary quantum of proof that this abnormal vicissitude of his employment, namely, his persistent and almost desperate resolve to complete this business automobile trip, was the cause of the aggravated and serious anterior myocardial infarction, and, thus, that his disability was the result of an accident arising out of and in the course of his employment. The degree of probability required in carrying the burden of the proofs in such case is settled law in this State. Belyus v. Wilkinson, Gaddis & Co., 115 N.J.L. 43 (Sup. Ct. 1935), and cases cited.
I find also that as a result of such accident, the petitioner sustained a disability to the extent of 35% partial permanent total disability. I will, therefore, enter judgment in favor of the petitioner and against the respondent, and pursuant to Rule 3:52 counsel may present, on proper notice, proposed findings of fact, conclusions of law and form of judgment consistent with the foregoing, which should embrace also the details of non-issuable matters such as the compensation rate and the like.