## TEN ELEVEN CORPORATION, PROSECUTOR, v. ANNA BRUNNER, DEFENDANT.

Submitted January 22, 1947—Decided May 29, 1947.

Before CASE, CHIEF JUSTICE, and, Justices HEHER and COLIE.

For the prosecutor, *Walter R. Hespe* and *Walter H. Jones.*

For the defendant, *Isidor Kalisch* and *Greenstone & Greenstone.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. This is a workman's compensation case, instituted by the widow, in which the Bureau found,

with affirmance by the Essex Pleas on appeal, that an accident which had arisen out of and in the course of the employment and which had been the occasion of an award for partial permanent disability to the employee during his life time was a contributory factor in his subsequent death.

The decedent, Adolph Brunner, was employed by the prosecutor in *certiorari* as building superintendent and janitor for several apartment houses. On December 26th, 1943, while he was working in, and as a part of, his employment, laboring with some large furnace clinkers in the endeavor to break them apart with a heavy steel poker weighing about 75 pounds, he fell ill, presently collapsed, and suffered a hemorrhage on the left side of the brain, affecting speech. He filed a petition for compensation with the Bureau. That tribunal, on May 5th, 1944, determined that the petitioner had proved an injury due to an accident arising out of and in the course of his employment on December 26th, 1943, that the accident had "caused an injury to petitioner's heart and cerebral damage" resulting in a permanent disability thirty-five per cent. of total, and awarded "175 weeks compensation at the compensation rate of $20 per week, or a total of $3,500," in addition to medical and hospital bills and counsel fees. The determination was not appealed from and so far as it goes is *res judicata*. *Breheny* v. *County of Essex*, 132 *N. J. L.* 584, 589.

In May of 1944 Brunner moved from Newark to Seaside Heights, New Jersey. He was ailing, unable to work, did some fishing and whiled away his time. About April 10th, 1945, he had a heart attack and was treated by Dr. Van De Sande, who diagnosed the trouble as myocardial degeneration, heart block, and arteriosclerosis probably involving the coronary artery, with cerebral edema and probably a small cerebral hemorrhage. On May 2d Brunner was taken to the Spring Lake Heights Hospital. On May 15th he was removed to the Newark City Hospital, where, on May 27th, 1945, he died, at the age of sixty-five years. After his death the widow filed the present petition claiming compensation upon the allegation that death was caused by the above mentioned accident. Both the Bureau and the Pleas found affirmatively.

The main question is one of fact, namely, whether the acci-

dent was a contributory cause of the death; and the medical testimony is pivotal.

The absence of a clear preponderance of the proofs in favor of the claimant is indicated by the fact that the Common Pleas Judge who heard the appeal filed an opinion in which he found that the claimant had not sustained the burden of proving that decedent's death was causally related to his prior accident, and then, before signing the determination of facts and rule for judgment, submitted to reargument and later, although expressing some doubts, reversed his finding. Prosecutor alleges error in that procedure, particularly because it resulted in a determination made more than 90 days after the filing of the transcript, contrary to *R. S.* 34:15–66 as amended by chapter 74, *Pamph. L.* 1945. We regard that statutory provision as directory. It is not reasonable to suppose that the legislature meant to have the rights of litigants depend upon compliance by a judge with a statute fixing the ultimate day for judicial action. *Weinberger* v. *Erie Railroad Co.,* 86 *N. J. L.* 259. Moreover, if the judgment in the Pleas were bad because out of time, the award in the Bureau would, it seems, stand.

The medical witnesses were Dr. T. W. Van De Sande and Dr. Arthur Bernstein for the claimant and Dr. Jerome Kaufman for the employer.

Dr. Van De Sande is a general practitioner. He treated the decedent on several occasions between April 10th, 1945, and May 15th, 1945. Counsel for the claimant stated and reiterated that he had produced Dr. Van De Sande as a "treating physician," not as an "expert" and upon that ground resisted certain questions on cross-examination; nevertheless he propounded to the witness a lengthy hypothetical question which involved many elements including, over the objection of opposing counsel, diagnoses expressed by Dr. Bernstein at the hearing on the original application. A doctor's diagnosis is his conclusion as to the existence or identity of disease, drawn from the observable symptoms. The symptoms are facts. The diagnosis, particularly where the ailment is obscure or debatable, is an opinion based on those facts. Generally, a hypothetical question which includes with other facts

the opinion of another expert is improper. *In re Barber's Estate (Conn.)*, 27 *Atl. Rep.* 973; *Laughlin* v. *Christensen*, 1 *Fed. Rep.* (2d) 215; *Corrigan* v. *United States*, 82 *Id.* 106. As a result of that question, and related questions, the witness was brought to the giving of this testimony: "His [the decedent's] accident caused the first occurrence and it also was the cause of the second occurrence." The occurrences there referred to are the incident of the original break and the incident of the final break, respectively. Dr. Van De Sande was an expert within the limitations of his profession. He did not hold himself out, and was not presented, as a heart specialist. The quoted testimony lacks impressiveness.

Dr. Bernstein is a heart specialist. He had examined the decedent and he took an electric cardiogram on February 21st, 1944. He saw the decedent again on March 15th, 1944, March 21st, 1944, and April 8th, 1944. He testified at the original hearing and gave as his opinion that the decedent was then suffering from arteriosclerotic heart disease, with heart enlargement and heart failure and also a cerebral hemorrhage secondary to his condition; and that the original onset of heart failure and the first collapse were definitely related to the effort of cleaning the furnace. That was, of course, before the order of May 5th, 1944. Dr. Bernstein was also a witness at the hearing, after the decedent's death, which is now before us for review. He had not again seen the decedent. In response to a hypothetical question running over four printed pages he gave as his opinion that there was a causal relationship between the man's death and the original accident. Toward the end of the question was a statement assigned to Dr. Van De Sande that the accident of December 26th, 1943, was a competent producing cause of the heart and cerebral damage, and that "he was suffering from a condition due to this accident," at which point the deputy commissioner suggested a change in the language, which we may assume the questioner accepted; and later the deputy commissioner said, "Eliminate from the question the doctor's opinion as to the causal relationship," made the suggestion that certain other matter should be included and directed the witness not to consider the opinion of Dr. Van De Sande.

But earlier in the question were statements not only of Dr. Van De Sande's recital of symptoms but of his diagnosis and opinion thereon. The question was not reframed or reread. It is not clear to us, and we fear it was not made clear to Dr. Bernstein, precisely what was or was not in the question as it finally stood.

Dr. Jerome Kaufman was a heart specialist. He both examined and treated the decedent prior to the first hearing. He first saw the patient on February 17th, 1944, at the doctor's office, and made an electric cardiogram. Again in his office, and at about the same time, he saw the patient in conference with Dr. Bernstein. He visited the patient at the latter's home on March 21st, 1944; and again on March 22d, March 24th, March 28th, April 4th and April 12th, 1944. On April 14th, the patient left Newark to go to the Jersey shore, and Dr. Kaufman did not see him again before testifying on May 3d, 1944. At that hearing the doctor testified that the patient had hypertensive arteriosclerotic heart disease, mild degeneration and possibly small cerebral hemorrhages, with a disability one third of total. Dr. Kaufman saw the patient again on May 18th, 1945, following the latter's removal from the Spring Lake Hospital to the Newark City Hospital. The doctor testified on March 4th, 1946, at the hearing now under review. His testimony was given in the light of his earlier personal knowledge of the case, of the history sheet compiled at the City Hospital, of the record of the physical examination made by the hospital as such and of the doctor's later examination. The results of each factor were briefly but succinctly given. The gist of his opinion on the vital question was that there was no causal relationship between what was called the second hemorrhage, which occurred at Seaside Heights, and the man's original condition; that the first hemorrhage was on the left side of the head in what is known as Broca's area, and that the second was on the right side of the head and was the result of arteriosclerotic cerebral vessels with hypertension, coming with systemic age, which is the most common way in which cerebral hemorrhage occurs.

Counsel for the employer endeavored to develop, on the cross-examination of Dr. Bernstein and upon the direct examination of Dr. Kaufman, that the decedent suffered from a cardiovascular disease of long standing, but was overruled by the deputy commissioner upon the theory, mistaken, as we find, that to enter upon that line of questioning or proof, or even of stipulation, would be contrary to the determination in the earlier case. The pertinent parts of the earlier holding are stated above and do not foreclose the possibility of a preexisting heart disease. The finding of liability arising out of occupational strain was entirely consistent with the preexistence of a heart ailment. The strain received in the employment may have been the cause of the injury either independent of or contributory toward an existing heart disease; but in either event the award does not close the door to proof that the subsequent incident arose out of the preexisting disease unaffected by the occupational strain. The question of pre-existing arteriosclerosis and hypertension was open, relevant and important. While the Workmen's Compensation Bureau is not bound by technical rules of evidence, it must ascertain the substantial rights of the parties and must do this by competent evidence. *Helminsky* v. *Ford Motor Co.*, 111 *N. J. L.* 369, 373; *Ruiness* v. *Grant Finishing Co., Inc.*, 132 *Id.* 422. It cannot disregard the fundamental rules of judicial proof in making awards. *Friese* v. *Nagle Packing Co.*, 110 *Id.* 588. However, it came out, on the cross-examination of Dr. Kaufman, that the "man had preexisting arteriosclerosis, a hypertension for several years," conditions which make a person "prone to have either myocardial infarction or cerebral hemorrhages * * * not necessarily related to any specific strain;" and that while the first hemorrhage was due to a strain received in stoking the furnace, the strain had spent itself in the intervening period and the second hemorrhage was not due to that or any strain.

The rule, stated in *Bryant* v. *Fissell*, 84 *N. J. L.* 72, and running on down through the decisions, is that in workmen's compensation cases the burden of proving that the death was caused by an accident rests upon the claimant. The presumption is that a death from heart disease is the result of

natural causes. *Lohndorf* v. *Peper Bros. Paint Co.,* 134 *Id.* 156; 46 *All. Rep.* (*2d*) 439; *affirmed,* 135 *N. J. L.* 352. It is a matter of common knowledge that heart disease is near the top, if not actually there, of the list of diseases arranged in numerical order of deaths produced. According to the evidence many more sufferers from hypertension and arteriosclerosis die from heart failure than from hemorrhage; and of the deaths from cerebral hemorrhage, some are related to strain and some are not. So that industry may not be burdened with a load not chargeable to it; we are under the duty to scrutinize the evidence carefully lest disability consequent upon disease alone be made the basis of an award. *Schlegel* v. *H. Baron & Co.,* 130 *N. J. L.* 611.

We conclude that the petitioner in the Bureau—defendant here—did not successfully carry the burden of showing that the accident met with in the employment was a contributory cause of death.

The award in the Bureau and the affirmance in the Pleas are reversed, without costs.