25 N.J. Super. 528 (1953)
96 A.2d 728
MACK CARROLL, PETITIONER-APPELLANT,
v.
NEWARK PRINTING COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Essex County Court Law Division.
Argued March 20, 1953.
Decided April 17, 1953.
*529 Mr. John A. Laird argued the cause for petitioner-appellant (Messrs. Roskein & Laird, attorneys).
Mr. Isidor Kalisch argued the cause for respondent-respondent (Messrs. Kalisch & Kalisch, attorneys).
FRANCIS, J.C.C.
The claimant here was denied an award of workmen's compensation for failure to establish that he had suffered an accidental injury arising out of and during the course of his employment. Hence this appeal.
Prior to the alleged incident of November or December 1950 Carroll had been in respondent's employ about 12 years as a compositor. This work entailed the cutting and trimming of copper and zinc plates with a power saw. And he testified without contradiction that as a normal incident of this operation fine particles or splinters of metal would be thrown off and come in contact with his nose or ears or other parts of his body.
Three or four days prior to January 6, 1951 he noticed a slight swelling on the edge of the right side of the septum of his nose. He thought it might be a hair, so he pulled it out and it bled a little. On January 6, he visited Doctor Edmond Edelson who diagnosed a small cancerous growth, known as an epithelioma. The doctor removed it by surgery *530 and administered some X-ray treatment at the site of removal.
Carroll had no idea what the condition was nor what had caused it until during a conversation with Doctor Edelson he was told that it might have come from a splinter of metal flying from his power saw and striking his nose. However, although he worked regularly with the saw he had no recollection of any specific time when he was struck in the nose by such a splinter. Nor did he have any recollection of this portion of his nose ever being struck by a splinter. If it had not been for Dr. Edelson's suggestion it would not have occurred to him that his nose condition might be related to his work.
The record discloses that Dr. Edelson was not in the hearing room when this testimony was given. When the doctor appeared he said that on the occasion of the first examination Carroll told him he had been struck in the nose by some flying metal splinters and that in November or December 1950 he noticed a sore or lump on his nose, which did not heal. At another place in the testimony the doctor asserted that Carroll said he noticed the cut or sore from the splinters right after the accident or injury. And he said he was sure this was the history given to him. In answer to a hypothetical question which substantially incorporated this history he attributed the epithelioma to the accident.
Appellant also called another medical expert who was asked to assume that "either one or two weeks before January 15, 1951 or once prior to that time, six weeks prior to that time, the exact date of which is unknown to him * * * he was struck by one of these splinters, it hit and embedded in his nose," and to state whether there was a causal relationship between that incident and the growth. To this question the doctor's answer was not very responsive:
"This man was subjected to an atmosphere in which flying bits, fine metal pieces, struck him about the face. Such injuries may lead to that type of irritation, it may be followed with the epithelial horn of a very malignant type which was subsequently removed. I believe such occurrence did, in fact, happen and that the resultant injury was surgically removed."
*531 It should be recalled that Carroll had been working on the power saw and apparently exposed to flying metal particles for years, and that at no point in his testimony did he fix any specific time when he was struck by such particles at the site of this malignancy. Nor did he say that he had ever been struck there at any time to his knowledge within two years prior to the filing of his petition for compensation. And there is no circumstance in his employment, beyond his constant exposure to these particles for many years, from which an actual contact between flying metal particles and the site of the cancer within such a two-year period could be inferred.
Appellant's medical witnesses gave no opinion or statement of the incubation period of cancer germs or bacilli or cells from the time of injury, and no opinions as to the length of time this growth had been in existence or developing. Their conclusion of causal relation was based upon the assumed fact recited in the hypothetical question that an actual contact between the diseased area of the nose and a metal splinter had taken place "one or two weeks before January 15, 1951, or once prior to that time, six weeks prior to that time, the exact date of which is unknown to him, * * * he was struck by one of these splinters, it hit and embedded in his nose * * *" (sic  as put to Dr. Shapiro), or had taken place about the first week in November 1950 (as Dr. Edelson asserted as part of the history given to him by Carroll).
The record provides no credible support for either factual assumption. Carroll, the only person who could have supplied such a foundation, failed to do so. He was ingenuous and honest in his testimony and conceded in effect that he did not have the slightest notion as to when, if ever, metal chips struck the particular area of his nose. His supposition that such contact took place seems to have arisen entirely from Dr. Edelson's suggestion.
In evaluating an answer to a hypothetical question consideration must be given to the problem of whether or not the material facts contained therein have been established *532 by proof. Obviously, if they have not been proved, then the answer of the expert carries no probative force and cannot be used as a basis for a judgment. As the Supreme Court said in Beam v. Kent, 3 N.J. 210, 215 (1949):
"The opinions and conclusions of experts must be based either upon facts within their own knowledge which they detail to the jury or upon hypothetical questions embracing facts supported by the evidence and relating to the particular matters upon which the expert opinion is sought, which facts, for the purpose of the opinion, are assumed to be true."
And as stated in 2 Wigmore on Evidence (3rd ed.), sec. 672, pp. 792-793:
"1. Testimony in the shape of inferences or conclusions rests always on certain premises of fact. * * * 2. These premises, a consideration of which is essential to the formation of the conclusion or opinion, must somehow be supplied to the jury by testimony."
The importance of some factual basis for determining a time of injury is made manifest by the respondent's medical proof. The medical expert evidence offered by it is to the effect that "It is a well known fact that it takes years for a cancer to develop in the skin even with the most potent types of carcinogenic stimulation which we have available to us." While it may be inferred from appellant's witnesses' testimony that they do not agree with this assertion, they did not at any time specifically discuss the length of time necessary for the development of an epithelioma following an injury.
Appellant refers to the following question and answer in Dr. Edelson's testimony in support of his claim:
"Q. Did you find any metal at all in any of the specimens that you examined? A. Yes, sir."
Even if this proof is accepted as credible, there is nothing to show how long the metal had been there; that is, whether it had been there for years, as respondent's doctor said would *533 be necessary in order for even the possibility of causal relation to exist between it and the cancer, or for a much shorter time which, it may be inferred, was the appellant's doctors' view. Thus it is not possible to draw any conclusion with respect to a time of contact over the years of the employment exposure to flying particles.
In any event, in view of the dubious qualitative value of the testimony of this witness generally, the particular statement as to this finding is not impressive. The question and answer stand alone in the record. The pathological study of the specimen was done in the laboratory of the Beth Israel Hospital by another doctor who was not called as a witness, nor was his report produced.
Since the appellant's testimony is deficient in the matter of proof of an accident, even within the broad outlines of Mecca v. Phoenix Brass Fittings Corp., 124 N.J.L. 6 (Sup. Ct. 1940), is there any other basis for such a finding? It is urged that the history alleged by Dr. Edelson to have been given to him by Carroll provides such support. However, even assuming that the history might be used as substantive evidence of the facts because there was no objection to its introduction, the doctor's testimony is inconsistent with that of Carroll and it is plain that the Deputy Director, who had the opportunity of seeing and hearing the witness, did not consider it credible. And our independent reading of the record leaves us in agreement with that conclusion.
Finally, it is argued that a report filed with the Department of Labor by respondent and dated January 15, 1951 provides the missing proof. This report, which is signed by the employer, states:
"About 6 weeks ago while using saw, flying splinter must have hit and imbedded."
And it gives the part injured as the right nostril. However, it appears that on this day, which was after Carroll had visited Dr. Edelson, after the matter had been discussed with him, after he had received the suggestion of possible employment origin of the nasal growth, and after the growth had *534 been excised, he made out an accident report for his employer. Then on the same day the employer's report to the Department, obviously based on Carroll's supposition, was prepared and filed. In the circumstances presented it furnishes no proof of a compensable accident.
A consideration of all of the evidence leads me to the conclusion that appellant failed to sustain the burden of establishing a right to compensation.
Accordingly the judgment of the Workmen's Compensation Division is affirmed.