44 N.J. Super. 129 (1957)
129 A.2d 746
ARLINE S. FINK, PETITIONER-RESPONDENT,
v.
CITY OF PATERSON, AMENDED TO PERMANENT VETERANS HOUSING AUTHORITY OF PATERSON, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1957.
Decided March 4, 1957.
*132 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Ralph W. Campbell argued the cause for respondent-appellant (Mr. Frank P. Zimmer, attorney).
Mr. Robert Kleiner argued the cause for petitioner-respondent (Messrs. Kushner and Kleiner, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
The Passaic County Court concurred with the Division of Workmen's Compensation in concluding that Samuel R. Fink, petitioner's deceased husband, died as a result of an accident arising out of and in the course of his employment as manager of respondent's housing project. The immediate cause of death was a heart attack found to have been precipitated by an employment incident attended with considerable apprehension and tension on the part of the decedent. Respondent's appeal poses two points: (1) the factual conclusions as to emotional strain were not proven; (2) defects in the hypothetical questions addressed to two of petitioner's medical experts nullify their testimony.
Fink died November 26, 1954. For two and one-half years he had been employed at the respondent's 380-tenant *133 project and during that period there had been many complaints by the tenants. Mr. Bentlee, executive director of the project, and Fink's immediate superior, had been dissatisfied with Fink's performance of his duties for some time and "gave him the devil on occasions." A meeting was called by Mr. Croland, Housing Authority Commissioner, Bentlee's superior, for November 26, 1954, "to hear both sides of the story"; that is, he wanted to get "Mr. Fink's version of what should or should not have been done" and the position of "the people that actually do the work" under Fink's supervision. It was Croland's opinion that some of the work was not being done properly. Croland was a member of a six-man agency which had authority to discharge Fink. This was the first time a meeting had ever been called at which Croland was to hear complaints concerning Fink's performance of his duties.
Fink had sustained a heart attack in August 1953 and a cerebral embolism April 7, 1954. It is agreed that he was in an advanced stage of arteriosclerotic heart disease in November 1954, but he was apparently feeling well when he left home to go to work on the fatal November 26. The scheduled meeting took place. There were differences of opinion between Fink and the other employees as to whose fault was producing the conditions complained of. Although the session was not acrimonious or loud, Fink was unhappy and disturbed. Croland testified Fink was "too nervous even to talk to me." Croland sent the other employees out and continued his discussion with Fink alone because the latter was so nervous. At Croland's suggestion Fink walked off with him to inspect some of the subjects of complaint about the premises, but Fink still "wasn't just normal" but "a little nervous and jumpy," and "progressively getting nervous." Croland, noting his condition, suggested Fink go back to his office, and shortly thereafter he was found, unconscious. Within an hour he had expired. Two medical experts called by the petitioner, both specialists in internal medicine, gave it as their opinion that the emotional disturbance effected by the circumstances of the meeting were *134 the aggravating and probable precipitating causes of the fatal heart attack.
It is settled that where a workman's heart failure is caused or precipitated by an unusual strain or exertion beyond the mere employment itself, sustained while in the course of his employment, there is a compensable accident, and the strain need not be physical or laborious in character but may consist of "unusual emotional or nervous strain and anxiety." Snoden v. Watchung Borough, 29 N.J. Super. 41, 50 (App. Div. 1953), affirmed 15 N.J. 376 (1954); cf. Kream v. Public Service Coordinated Transport, 42 N.J. Super. 307 (App. Div. 1956), certification granted 23 N.J. 257. Respondent concedes the rule but urges that the testimony does not support a conclusion that the decedent was emotionally upset to any marked degree. We are unable to concur in the argument. The decedent was being called to account. The situation confronting him at the meeting was fraught with the possibility of dire consequences if he were found derelict in his duties. The natural capacity of the occasion for evoking unusual strain and anxiety is obvious and the objective manifestations thereof apparent in the testimony summarized. We certainly cannot say that the concurring findings of the Division and the County Court on the existence of unusual strain or anxiety are "so plainly unjustified by the evidence" that the interests of justice necessitate their nullification. Mahoney v. Nitroform Co., Inc., 20 N.J. 499, 507 (1956).
Nor are we impressed with the contention that there is no convincing medical testimony to support the conclusion of causal relation between the stress, superinduced upon the pre-existing heart disease, and the fatal attack. Without detailing it, we are clear that it amply supported the findings of fact. Respondent's sole medical witness testified that "in order * * * for there to be causal relationship between employment and the death there must be some outstanding stress or strain incident and I failed to find it in the hypothetical question." It is not clear whether the witness was thereby offering an opinion of law or of medicine. If it was *135 his medical view that the facts in proof did not show an emotional episode of such degree as to have the probable capacity of producing in such a person as petitioner the fatal attack, the tribunals below were free to find to the contrary from the testimony of the petitioner's medical experts, which seems to us to accord with the probabilities which would be indicated by common experience. The immediacy of the attack in relation to the episode of stress is most persuasive.
Respondent urges that the responses of petitioner's medical experts to the hypothetical questions addressed to them are devoid of evidential value because the questions postulated two prior coronary occlusions, whereas the proof was that petitioner had experienced first "a coronary thrombosis with myocardial infarction and subsequently * * * a cerebral embolus," the former in 1953 and the latter a few months before his death.
It is to be acknowledged at the outset that it is still the law in this State that the opinion of an expert witness not founded upon facts within his own knowledge and imparted to the fact-finder must be based upon a hypothetical question embracing material facts supported by evidence in the case. Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295 (1954); Beam v. Kent, 3 N.J. 210 (1949); Ten Eleven Corporation v. Brunner, 135 N.J.L. 558 (Sup. Ct. 1947); Zaklukiewicz v. Western Electric Co., 16 N.J. Super. 189 (App. Div. 1951). It has been recommended by the Supreme Court Committee on the Revision of the Law of Evidence that the proposal in the Uniform Rules of Evidence (Proposed Rule 58) for dispensing with the mandatory hypothetical question be concurred in because of the gross abuse of the technique. See 2 Wigmore on Evidence (3rd ed. 1940), § 686, p. 812. The artificiality of the current general approach to the use of hypothetical questions in our workmen's compensation practice was recently the subject of pertinent critical comment by Judge Francis. "Recent Judicial Treatment of the Workmen's Compensation Act," 79 N.J.L.J. 337, 345 (Sept. 13, 1956). The record in *136 the case before us is a good example of the kind of hypothetical "question" commonly encountered, where there is an apparent assumption by both examining counsel and expert witness that the propounding of the question is a mere procedural formality to be gotten on the record before the expert may proceed to state his opinion, generally arrived at before he comes to court and on the basis of information previously supplied him.
The basic medical history in this case was supplied by Dr. Yager, decedent's attending physician. In addition to the attacks already recounted, Dr. Yager testified that during the terminal period the decedent "was certainly in diminished cardiac reserve all the time," had "marked cardiac enlargement," and was "constantly in mild failure requiring the use of mercurial diuretics * * * to keep him up and about." Counsel for petitioner propounded a hypothetical question to Dr. Paris which occupies 13 pages of the printed appendix and was interrupted by some ten objections by opposing counsel, almost all of which were accepted as amendments of the question by petitioner's counsel and one of which was directed, at the conclusion of the question, to be incorporated by reference in the question by the deputy director. In the course of the question it was stated that "the decedent had suffered two heart attacks" prior to November 26, 1954. This is the crux of the present point of appeal. No objection was made to this recital at the hearing. The final objection to the question was that "it is not a proper hypothetical question and does not incorporate all the facts," and for reasons of form.
The fact that objection is not made to the question on the ground of failure of the record to substantiate essential facts whose existence is hypothesized therein will not sustain the response as evidence if there is such failure. Zaklukiewicz v. Western Electric Co., supra (16 N.J. Super., at page 197). The omission is a substantive evidential deficiency. Ibid. But the unfounded component of the question must appear to be an "essential" one in order for the default to be accounted fatal. Ibid. This consideration complements *137 the application to the present case of the fundamental rule that reversal will not be ordered where the error assigned does not appear to be prejudicial nor the sustaining of the judgment under appeal inconsistent with substantial justice. R.R. 1:5-3(c). The explanation by Dr. Paris of his affirmative answer to the question indicates that it was not necessarily essential to his conclusion to assume that there was more than one prior coronary attack. He expressly referred to a history of "one or more coronary occlusions." It is obvious that his diagnosis and conclusion as to causal relation between employment episode and final attack was based upon an assumption only of an advanced condition of heart disease and this fact is not only founded in Dr. Yager's testimony but was the opinion of Dr. Kaufman, respondent's expert, as well. The latter testified that petitioner had had "advanced arteriosclerosis and advanced complications of heart disease." The cerebral embolism was cited as one of the complications. It was opined that "such an individual is certainly subject to other attacks of coronary occlusion based on the natural progress of this arteriosclerotic heart disease."
Insofar as respondent's argument is based on the difference between a coronary thrombosis, the term used by Dr. Yager, and a coronary occlusion, referred to in the hypothetical question, it is not persuasive of error in receiving the evidence. These terms are frequently used interchangeably, even by medical experts. Dr. Paris gave the technical explanation in the course of his testimony here that "a hemorrhage or breaking off a placque or thrombus, occluding the coronary artery and causing the acute coronary occlusion" was what produced the death. The thrombus is the blood clot, the occlusion the mechanical blockage of the artery.
The technique of formulating the hypothetical question for submission to petitioner's other medical expert, Dr. Kleiner, was even more objectionable. He had heard the question addressed to Dr. Paris and was asked for his conclusion as to causal relation on the basis thereof. Objection was made on the ground that the witness was not in court when Dr. Yager testified and the latter's testimony had been *138 incorporated by reference in the question as posed to Dr. Paris. Petitioner's counsel then undertook to summarize Dr. Yager's testimony, with numerous interpolatory amendments by opposing counsel. The entire episode is suggestive of a willingness, nay, eagerness, on the part of petitioner to have anything go into the question if only a response free from objection could be elicited for the record. Dr. Kleiner's general obliviousness to the contents of the question as amended, as distinguished from his briefing on the case prior to the hearing, is shown by his reference, in explanation of his conclusion, to "several attacks of coronary occlusions," notwithstanding that one of the amendatory objections by opposing counsel had eliminated the animadversion in the question to treatments by Dr. Yager for a "coronary occlusion on two different occasions." Cf. Ten Eleven Corporation v. Brunner, supra (135 N.J.L., at page 562). Note the practical suggestions for improvement of trial practice in this connection in Stanley Co. of America v. Hercules Powder Co., 29 N.J. Super. 545, 564 (App. Div. 1954), reversed on another ground in 16 N.J. 295 (1954), cited supra. Nevertheless, our distaste for such maladroit submission of the hypothetical question aside, we must return to the determinative matter of prejudicial error in the assigned variance between question and evidential record. As noted, the reference to two prior coronary occlusions in the question was partly neutralized by the amendatory objection noted above. But the basic answer to the argument is that the reference to two coronary occlusions, as such, was not an essential factor in the question insofar as the witness was concerned. He stated:
"A. First, this individual already has had several prior attacks of coronary occlusions with complications going with it showing this man was suffering from coronary arteriosclerotic heart disease. He was constantly under the care of a physician, and I feel that this emotional disturbance that took place on the date when he died was a sufficient contributory cause to precipitate another fatal heart attack from which, apparently, he did not recover." (Emphasis supplied.)
*139 The prior assumed occlusions were significant to this witness only as showing a present condition of "coronary arteriosclerotic heart disease" and that condition was the essential premise for his conclusion of causality. As we have already made clear, the existence of such a condition is conceded by both sides.
There is yet another reason why there should not be a reversal on the basis of the point under discussion. It was not raised in the County Court. While the brief submitted there on behalf of respondent does assert that the hypothetical question "incorporated facts which had not been proven and which were not in the case," it does not state what those facts were. This omission may have been dictated by the consideration that, for purposes of another contention in the appeal, respondent deemed it expedient to take the flat position that the decedent "had suffered two previous heart attacks," an assertion made twice in the County Court brief. No objection to the hypothetical question is posed in either of the two point headings in that brief, and we believe that court soundly regarded the issue as not presented, as is indicated by the absence of treatment thereof in its opinion.
The County Court is required to deal only with issues submitted to it. Conquy v. New Jersey Power and Light Company, 23 N.J. Super. 325 (App. Div. 1952), and this court will not ordinarily reverse on a point of appeal not specifically made in the County Court. "The object of an appeal is not to retry a case but to correct errors properly noted below." Roberts Electric, Inc. v. Foundations and Excavations, 5 N.J. 426, 432 (1950). Respondent, having stressed the plurality of antecedent heart attacks before the County Court, should not be permitted to take a contrary position as to the contents of the evidential record before this court. Cf. Brown v. Allied Plumbing and Heating Co., 129 N.J.L. 442, 446 (Sup. Ct. 1943), affirmed 130 N.J.L. 487 (E. & A. 1943).
Affirmed.